```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ANDREA DIPIERDOMENICO and
JOHN DIPIERDOMENICO,

                        Plaintiffs,        MEMORANDUM & ORDER
                                           19-CV-0854(JS)(ARL)
        -against-

UNITED STATES OF AMERICA,

                        Defendant.
----------------------------------------X
JOHN DIPIERDOMENICO and
ANDREA DIPIERDOMENICO,

                        Plaintiffs,

        -against-                          19-CV-4008(JS)(ARL)

UNITED STATES OF AMERICA

                        Defendant.
----------------------------------------X
APPEARANCES:
For Plaintiffs:         James Druker, Esq.
                        Paula Schwartz Frome, Esq.
                        Kase & Druker, Esqs.
                        1325 Franklin Avenue, Suite 225
                        Garden City, New York 11530

For Defendant:          Andrew DeMello, Esq.
                        Jordan Andrew Konig, Esq.
                        U.S. Department of Justice, Tax Division
                        P.O. Box 55
                        Washington, DC 20044
```

SEYBERT, District Judge:

Plaintiffs John DiPierdomenico and Andrea DiPierdomenico ("Plaintiffs") commenced these actions against defendant the United States of America ("Defendant") under Section 7422 of the Internal Revenue Code seeking a refund of income taxes for tax

1

years 2006 and 2007.  (See Case No. 19-CV-0854 (the "2006 Action"), Compl., D.E. 1 (asserting claims arising out of tax year 2006); Case No. 19-CV-4008 (the "2007 Action"), Compl., D.E. 1 (asserting claims arising out of tax year 2007).)  Currently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (See 2006 Action, Def. Mot., D.E. 24; Pls. Mot., D.E. 27; see 2007 Action, Def. Mot., D.E. 22; Pls. Mot., D.E. 25.)[1]  For the reasons set forth below, Defendant's motion is GRANTED and Plaintiffs' cross-motion is DENIED.

FACTUAL BACKGROUND[2]

I. Plaintiffs' Power of Attorney

On or around July 13, 2010, Plaintiffs signed a Power of Attorney ("POA") covering tax years 2006 through 2009 in favor of Alan J. Garfunkel, Esq. ("Mr. Garfunkel") arising out of an IRS investigation into their income tax returns.  (Compl. ¶¶ 7-8; POA,

---

[1] The parties filed identical motions and supporting papers in both cases.  (Compare 2006 Action, Def Br., D.E. 24-1; Pls. Br., D.E. 27-6; Def. Reply, D.E. 28; Pls. Reply, D.E. 30 with 2007 Action, Def Br., D.E. 22-1; Pls. Br., D.E. 25-6; Def. Reply, D.E. 26; Pls. Reply, D.E. 28.)  Plaintiffs also attached the Complaints filed in both actions as exhibits to their cross-motion.  For ease of reference, the Court cites to the documents filed in the 2006 Action (No. 19-CV-0854), except where otherwise noted.

[2] The following facts are drawn from the Complaints and the parties' submissions and are assumed to be true for purposes of this Memorandum and Order.  See L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 429 (2d Cir. 2011).

2

Ex. A to the 2007 Action Compl., D.E. 1-1.) The POA provides, among other things, that "[o]riginal notices and other written communications will be sent to [Plaintiffs] and a copy to the first representative listed," i.e., Alan J. Garfunkel. (POA § 7.)

II. Mr. DiPierdomenico's Conviction

On December 30, 2014, Plaintiff John DiPierdomenico ("Mr. DiPierdomenico") waived criminal indictment and pled guilty to one count of falsely subscribing to a 2008 tax return in violation of 26 U.S.C. § 7206(1) before the undersigned. (See United States v. DiPierdomenico, No. 14-CR-0659, Min. Entry, D.E. 5; see also id., D.E. 3 (Information); D.E. 4 (Waiver of Indictment).) Mr. DiPierdomenico entered into a plea agreement with the Government whereby he agreed that "restitution with respect to [his] tax liabilities," subject to Court approval, was $185,082.00. (Plea Agmt., Ex. A to Def. Mot., D.E. 24-2, ¶¶ 1(e), 2.) Mr. DiPierdomenico agreed to pay restitution "in the amount of the income tax liabilities for the years 2006-2009 arising out of the tax returns for himself and DiPier Enterprises," in addition to penalties and interest. (Plea Agmt. ¶ 4.) Mr. DiPierdomenico further agreed to cooperate with the IRS in the "ascertainment, computation and payment of the correct income tax liability for the years 2006 – 2009 for the 1120S tax returns of DiPier Enterprises and his personal 1040 tax returns." (Id.) In return, the Government agreed that "no further criminal charges will be

3

brought against [Mr. DiPierdomenico] for tax evasion regarding his own tax returns . . . during the years 2006 through 2009," among other things. (Id. ¶ 5(a).)

The Presentence Investigation Report ("PSR"), dated July 9, 2015, noted that for the tax years "ending 12/31/06 through 12/31/09 [Mr. DiPierdomenico] electronically filed fraudulent 1120S Forms with the IRS" and that Mr. DiPierdomenico "failed to truthfully account for $215,175 in income on his filed 2006 through 2009 Form 1040 individual income tax returns." (No. 14-CR-0659, PSR, D.E. 9, ¶¶ 5-6.) The PSR also provided that on April 22, 2015, Plaintiffs filed amended returns and "repaid the total tax due in this case plus associated interest and penalties for tax years ending 12/31/06 through 12/31/09." (See id., ¶¶ 2, 9; accord Compl. ¶ 14.) The PSR also states that "IRS officials reported that the amended returns were not filed in a timely manner and thus have not been formally processed by the IRS" and are "being held by the Government as 'informative items.'" (No. 14-CR-0659, PSR, D.E. 9, ¶ 2.) In its recommendation, Probation noted that "although the count of conviction pertains to tax year 2008, [Mr. DiPierdomenico] is accountable for the total tax loss for 2006 through 2009." (No. 14-CR-0659, Probation Rec., D.E. 9-1, at 1.) Defendant did not object to the PSR.

On September 17, 2015, the undersigned adopted the PSR and sentenced Mr. DiPierdomenico to one month of imprisonment and

4

imposed a fine of $85,000 and a special assessment of $100. (No. 14-CR-0659, Sent'g J., D.E. 12; see id., Min. Entry, D.E. 11.) By December 22, 2015, the Government reported that Mr. DiPierdomenico satisfied the Judgment. (No. 14-CR-0659, Satisfaction of J., D.E. 14.)

III. Post-Conviction Activity

On or around March 31, 2016, two IRS agents appeared at Plaintiffs' home. (Compl. ¶ 15.) The agents allegedly stated that Plaintiffs were "required" to sign certain paperwork, a "Closing Agreement," to "close the criminal case against Mr. DiPierdomenico." (Id. ¶¶ 15-16). Plaintiffs signed the Closing Agreement although they did not know its terms or contents. (Id. ¶ 17.) Plaintiffs aver that the IRS agents did not provide Plaintiffs nor Mr. Garfunkel with copies of the Closing Agreement as required under the POA. (Compl. ¶¶ 18-19.)

Defendant attached a copy of the Closing Agreement, titled "Agreement As To Final Determination of Tax Liability and Specific Matters," and signed by Plaintiffs on March 31, 2016, by a Revenue Agent and Revenue Agent Receiver on August 23 and 24, 2017, and by the "Acting Group Manager, New York Group 1501" on August 30, 2017. (Closing Agmt., D.E. 28-1, at 1, 3.) The Closing Agreement noted that Plaintiffs "filed a joint income tax return for the taxable year[s]" 2006 through 2009 and that "the parties have resolved the issue as to whether the assessment and collection

5

of a deficiency in income tax, penalty and interest for the taxable year[s]" 2006 through 2009 are "barred by the applicable limitations period under I.R..C. §§ 6501 and 6502." (Closing Agmt. at 1.) The Closing Agreement then provided, among other things, the amount of Plaintiffs' "[f]ederal tax liability" for tax years 2006 through 2009. (Closing Agmt. at 1-2.)

On April 26, 2016, the IRS returned Plaintiffs' 2006 and 2007 tax year payments on the grounds that it could not accept payments beyond the statute of limitations. (Compl. ¶ 20.) On or around July 2016, the IRS sent Plaintiffs collection notices. (Id. ¶ 21.) At that time, Plaintiffs and Mr. Garfunkel discovered that the terms of the Closing Agreement waived "the statute of limitations and restored the 2006 [and 2007] year to collection[s]." (Id. ¶¶ 17, 21-22.) Mr. Garfunkel questioned why the IRS initiated collections after it returned Plaintiffs' payments based on the statute of limitations. (Id. ¶ 22.) Plaintiffs contested the collections notice and argued the Closing Agreement was void because it violated IRS regulations in "bypassing Mr. Garfunkel" under the POA. (Id. ¶ 24.) Plaintiffs also argued that the Closing Agreement did not constitute a knowing "voluntary waiver of [their] rights because the [IRS agents] misrepresented [the Closing Agreement's] contents and did not allow [ ] [P]laintiffs to read it." (Id. ¶¶ 25, 30-31.) The IRS denied Plaintiffs' objections and on March 12, 2018, Plaintiffs

6

paid the IRS $37,079.94 and $136,073.50, the amounts due for the 2006 and 2007 tax years, respectively. (2006 Compl., D.E. 27-2, ¶ 27 (2006); 2007 Compl., D.E. 27-4, ¶ 27 (2007).)

On March 14, 2018, Plaintiffs filed a refund claim for the 2006 tax year. (Compl. ¶¶ 28.) On August 30, 2018, Plaintiffs filed a refund claim for the 2007 tax year.[3] (2007 Compl., D.E. 27-4, ¶ 28; 2007 Action, 2007 Refund Claim, Ex. B to Compl., D.E. 1-2.) Defendant did not respond. Plaintiffs initiated the 2006 Action on February 13, 2019 seeking a judgment for $37,079.94, the amount they allegedly overpaid for the 2006 tax year. (See 2006 Action, Compl.) Plaintiffs commenced the 2007 Action on July 11, 2019 seeking a judgment for $136,073.50, the amount they allegedly overpaid for the 2007 tax year. (See 2007 Action, Compl.)

## DISCUSSION

I. Standard of Review

The standard for a motion for judgment on the pleadings under Rule 12(c) is the same standard applicable to motions to dismiss under Rule 12(b)(6). L-7 Designs, 647 F.3d at 429. To survive the motion, a plaintiff must plead sufficient factual allegations in the complaint to "state a claim [for] relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint does not need "detailed

---

[3] Plaintiffs did not submit a copy of their Claim Refund and Request for Abatement with respect to the 2006 tax year.

factual allegations," but the standard demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. In addition, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." Id. Determining whether a plaintiff has met his burden is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Iqbal, 556 U.S. at 678).

In deciding a motion for judgement on the pleadings, the Court is confined to "the allegations contained within the four corners of [the] complaint," Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), but this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-52 (2d Cir. 2002).

II. <u>Analysis</u>

There is no dispute that, in connection with Mr. DiPierdomenico's guilty plea, Plaintiffs paid the taxes, penalties, and interest due under amended income tax returns for tax years 2006 through 2009. There is also no dispute that the IRS, for whatever reason, returned Plaintiffs' payment for the 2006 and 2007 tax years. Plaintiffs argue that they are entitled to refunds of $37,079.94 and $136,073.50, the amounts due for the 2006 and 2007 tax years, because the IRS "deceived" them into waiving the statute of limitations through the Closing Agreement. (Pls. Br. at 2; Pls. Reply at 5.) Defendant argues that under 26 U.S.C. § 6501, the IRS was permitted to assess and collect Plaintiffs' 2006 and 2007 tax liabilities regardless of whether "it obtained a waiver by Plaintiffs of the general statutes of limitation on assessment and collection of federal income taxes." (Def. Br. at 5.) Defendant also argues that the IRS, at the least, "had a contractual right to the payment of these funds under" Mr. DiPierdomenico's plea agreement which is enforceable even though "the IRS attempted to re-collect these taxes once they were erroneously refunded." (Def. Reply at 5.)

With exceptions, the IRS has up to three years after a tax return is filed to file an assessment against a taxpayer. <u>See</u> 26 U.S.C. § 6501(a). As relevant here, Section 6501(c)(1) provides an exception to the three-year period: "[i]n the case of a false

9

or fraudulent return with the intent to evade tax," the tax may be assessed "at any time." See also Chariot Plastics, Inc. v. United States, 28 F. Supp. 2d 874, 883 (S.D.N.Y. 1998) ("In cases of fraudulent returns, there is no limit on the time in which an assessment must be made."). Plaintiffs cite to the IRS agents' conduct and argue that the Closing Agreement is a nullity and therefore their waiver of the three-year statute of limitations is void. Defendant argues that the "general three-year period ceased to apply the moment Plaintiffs submitted false and fraudulent tax returns for 2006 and 2007." (Def. Br. at 6.)

The Court agrees with Defendant and finds that regardless of whether the Closing Agreement is enforceable, "the plain and unambiguous language of § 6501(c)(1) [ ] permit[s] the Commissioner to assess 'at any time' the tax for a year in which the taxpayer has filed 'a false or fraudulent return,' despite any subsequent disclosure the taxpayer might make." Badaracco v. Comm'r, 464 U.S. 386, 396 (1984). Here, Mr. DiPierdomenico pled guilty to falsely filing a 2008 tax return in violation of 26 U.S.C. § 7206(1) pursuant to a plea agreement with the Government wherein he agreed to "cooperate fully with the [IRS] in the ascertainment, computation and payment of the correct income tax liability for the years 2006 – 2009 for . . . his personal 1040 tax returns." (No. 14-CR-0659, Plea Agmt. ¶ 4; Prob. Rec., D.E. 9-1, at 1 ("Notably, although the count of conviction pertains to

10

tax year 2008, [Mr. DiPierdomenico] is accountable for the total tax loss for 2006 through 2009."); Compl. ¶ 13 ("[P]ursuant to a Judgment of Conviction of this Court dated September 22, 2015, . . . [P]laintiffs had tax deficiencies for the years 2006 and 2007.").) Consequently, Section 6501(c)(1) allows the IRS to assess and collect Plaintiffs' tax liabilities for the 2006 and 2007 tax years "at any time." Badaracco, 464 U.S. at 396.

It is true that "[t]he interpretation of an IRS closing agreement is generally governed by principles of contract law." Cinema '84 v. Comm'r, 294 F.3d 432, 445 (2d Cir. 2002). However, Plaintiffs do not challenge the applicability of Section 6501(c)(1) to their returns for the 2006 and 2007 tax years. The Court, having presided over Mr. DiPierdomenico's criminal case, doubts that they can: the Court sentenced Mr. DiPierdomenico based on representations that he paid "the correct income tax liability for the years 2006 – 2009 for . . . his personal 1040 tax returns" pursuant to a plea agreement with the Government. (No. 14-CR-0659, Plea Agmt. ¶ 4.) This understanding is consistent with the records presently before the Court. The tax liabilities reflected in the Closing Agreement for the 2006 and 2007 tax years are exactly the same as reflected in the PSR submitted before sentencing. (Compare No. 14-CR-0659, Closing Agmt. at 1-2 (noting income tax liability of $19,961 and $78,692 for tax years 2006 and 2007, respectively), with PSR ¶ 7 (noting tax losses of $19,961

11

and $78,692 for tax years ending in 2006 and 2007, respectively).) Thus, even acknowledging the IRS's conduct in procuring the Closing Agreement, Plaintiffs cannot contractually "waive" a limitations period that does not exist. As such, the IRS acted within its authority to assess and collect Plaintiffs' tax liabilities beyond the three-year statute of limitations.[4]

Having found that the Closing Agreement is no bar to the IRS's ability to assess and collect Plaintiffs' tax liabilities for the 2006 and 2007 tax years, the Court considers if Plaintiffs are entitled to a refund based upon "the egregious misconduct of [the IRS agents] in procuring a 'waiver' of the Statute of Limitations" and by "bypass[ing]" Mr. Garfunkel under the POA. (Pls. Br. at 2.) Under 28 U.S.C. § 1346(a)(1), "a district court [has] jurisdiction over a 'civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under

---

[4] If, as Plaintiffs suggest, the Closing Agreement is void and unenforceable, the Court queries why Plaintiffs seek a refund for only those funds the IRS returned as beyond the statute of limitations, i.e., the 2006 and 2007 tax years, and not for the 2008 and 2009 tax years, which are also covered by the Closing Agreement.

the internal-revenue laws.'"[5] <u>Greenidge v. Dep't of the Treasury-I.R.S.</u>, No. 15-CV-0287, 2015 WL 502232, at *3 (E.D.N.Y. Feb. 5, 2015). The parties do not dispute that Plaintiffs satisfied the statutory prerequisites for their refund claims and Plaintiffs do not dispute the amount they paid to the IRS. See <u>Akers v. United States</u>, No. 10-CV-1719, 2012 WL 5406970, at *3 (D. Conn. Aug. 1, 2012) (noting that under 26 U.S.C. § 7422(a), a "district court lacks jurisdiction over a refund suit unless the taxpayers have both (1) paid the assessed tax in full, and (2) filed a claim for a refund with the IRS." (citing <u>Flora v. United States</u>, 362 U.S. 145, 145, 176 (1960))). Rather, as stated, Plaintiffs argue that the IRS should be estopped from enforcing the Closing Agreement because its agents procured their signature "by fraud." (Pls. Reply at 3; Pls. Br. at 4-8.)

As a preliminary matter, these arguments are without merit for the reasons stated above. Further, "[w]hile the Supreme Court has not 'adopted a general rule that estoppel may never run against the government,' . . . the Second Circuit has estopped the Government 'only in very limited and unusual circumstances.'" <u>UKP Holdings, Inc. v. United States</u>, No. 15-CV-6431, 2018 WL 1701918,

---

[5] Plaintiffs' claims arise "under § 7422 of the Internal Revenue Code," (see Compl. ¶ 3), as compared to Section 7433 which allows a taxpayer to bring a civil suit for damages if any employee of the IRS negligently, recklessly, or intentionally disregards any of the provisions of the Internal Revenue Code.

at *7 (E.D.N.Y. Apr. 6, 2018) (quoting McGinley v. United States, No. 12-CV-5471, 2013 WL 5466634, at *7 (D.N.J. Sept. 30, 2013), and United States v. Boccanfuso, 882 F.2d 666, 670 (2d Cir. 1989)). "A party seeking to estop the Government must establish that 'the Government made a misrepresentation upon which the party reasonably relied to its detriment'" and that "the government's misrepresentations constituted affirmative misconduct." Id. (quoting Boccanfuso, 882 F.2d at 670) (further citations omitted). Here, there is no doubt that Plaintiffs knew or should have known that as a result of the criminal conviction against Mr. DiPierdomenico, they were required to comply with the terms of the plea agreement and pay their 2006 and 2007 tax liabilities. Indeed, they concede as much. (See Pls. Br. at 4.) Plaintiffs' reliance "upon the misstatements of the IRS was therefore unreasonable and does not justify equitable relief." UKP Holdings, 2018 WL 1701918, at *7.

Moreover, the Court "declines to hold the Government responsible for the mistakes and misjudgment" of Plaintiffs who, as stated, concede that they were "obligated" to make payments for the 2006 and 2007 tax years "under the Judgment of Conviction against Mr. DiPierdomenico." (Pls. Br. at 4); UKP Holdings, 2018 WL 1701918, at *10. Accepting the allegations as true, the IRS's conduct surrounding the execution of the Closing Agreement and "erroneous" return of Plaintiffs' 2006 and 2007 tax year payments

14

"was certainly 'less than exemplary.'" UKP Holdings, 2018 WL 1701918, at *10 (quoting Boccanfuso, 882 F.2d at 670). "It is unfortunate that professionals at the IRS, who are specifically charged with helping taxpayers navigate our complex and confusing tax code, failed to recognize the errors in" speaking to Plaintiffs, who were presumably represented by counsel, regarding the Closing Agreement and by returning the 2006 and 2007 payments.[6] Id. But "[i]t ignores reality to expect that the Government will be able to 'secure perfect performance from its hundreds of thousands of employees scattered throughout the continent.'" Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 433 (1990) (citations omitted). Nothing changes "the fact that [Plaintiffs were] cavalier in [their] reliance upon the misstatements of the IRS personnel, and its failure to conduct independent legal due diligence." UKP Holdings, 2018 WL 1701918, at *10. In any event, "the IRS's alleged misstatements as to the statute of limitations . . . do not amount to affirmative misconduct." Id. (citations omitted).

---

[6] It is worth noting that, as of the date of the PSR, Plaintiffs' amended returns were not "formally processed" and the IRS returned their 2006 and 2007 tax year payments only nine months' later. Thus, while the Court does not excuse the IRS's actions, Plaintiffs were on notice that, as of the time of sentencing, their amended returns were not formally processed and were "being held by the Government as 'informative items.'" (No. 14-CR-0659, PSR, D.E. 9, ¶ 2.)

15

Finally, it is "of no consequence" that the IRS may have violated its own regulations (see, e.g., Pls. Reply at 4), because the regulations do not have "the force of law" and do not "bind the IRS or create actionable rights for taxpayers." UKP Holdings, 2018 WL 1701918, at *10 (internal quotation marks and citations omitted).

Therefore, the Court declines "to hold the Government responsible for the mistakes and misjudgment of" Plaintiffs. Id.

## CONCLUSION

For the reasons stated above, Defendant's motions in the 2006 Action (No. 19-CV-0854, D.E. 24) and the 2007 Action (No. 19-CV-4008, D.E. 22) are GRANTED and Plaintiffs' cross-motions in the 2006 Action (No. 19-CV-0854, D.E. 27) and the 2007 Action (No. 19-CV-4008, D.E. 25) are DENIED. The Clerk of the Court is directed to mark both of these cases CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  November  13 , 2020
        Central Islip, New York

16